## Henry B. Kennedy, Appellant, v. Margaret Borah et al., Appellees.

1. EVIDENCE—*what part of res gestœ.* *Held,* in this case, that certain evidence of acts and declarations tending to show a contemplated marriage was competent as part of the *res gestœ.*

2. SPECIFIC PERFORMANCE—*what essential to enforcement of ante-nuptial contract.* A proceeding for specific performance to enforce an ante-nuptial contract being an equitable remedy, the granting of the relief rests in sound judicial discretion, exercised upon a consideration of all the circumstances in the case, and to enforce performance of such a contract it must be fair and just, and not affected by any inequitable feature, and it must have a consideration to support it.

Bill in equity. Appeal from the Circuit Court of Wayne county; the Hon. E. E. NEWLIN, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed August 5, 1910.

RICHARD L. BOGGS and THOMPSON & TEMPLEMAN, for appellant.

CREIGHTON & THOMAS, for appellee, Margaret Borah.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

This is an appeal from a proceeding in equity in the Circuit Court of Wayne county instituted by appellant against appellees, wherein a decree was entered dismissing the bill.

Appellant was the surviving husband of Rebecca C. Kennedy, who died intestate December 1, 1905, at Fairfield leaving surviving her the appellee, Margaret Borah, a daughter by adoption, and the appellant, her only heirs at law, and leaving a personal estate of the value of $31,409.87.

Appellant by his bill and amendments thereto averred his marriage to the deceased Rebecca; and that prior thereto at Fairfield in July and August, 1905, he had several interviews with her about becoming married but that appellant did not consent to become married, and no agreement to marry was made; that he left Fairfield and went to Madisonville, Kentucky, to which place she wrote him a letter dated August 28, 1905, and relying upon the promises contained in the letter and in consideration thereof, he accepted the proposition of marriage, and the promise contained in the letter, and entered into an agreement with deceased to marry her and that under such agreement, and in reliance upon such promise, he did marry the deceased on the 25th day of October, 1905.

The letter of August 28, 1905, alleged to contain the proposition of marriage and the promise was as follows:

"Fairfield, Ill. Aug. 28 1905

Dear Friend

I will now answer your letter i received this morning i am not feeling very well dident sleep good last night was thinking about you these people hear ar doing lots of talking but i tell them it is my business as i am going to do as i please and if i want you to have my property they havent got any right to say what i shall do i have just bin down to

see Mr Rinard and toled him i was going to git married
he said if it was a business matter he could advise me but
about marrying a stranger i ought to be careful i told him
i wanted you to have all my property and Mr. Kennedy if
you and me are married this fall i agree to leave you all
my personal property when i die   i told Mr. Rinard that
if i wanted you to have all my property that it was nobodies
business and i had a right to do what i wanted for it was
mine  I am still taking my meals at the Fairfield house and
she is your friend Lottie told me if i wanted to marry you
and give you my property it was nobodies business Fred
Smith brought me your letter from the post office  my niece
laughed at me about answering your letter so quick when
will you get through so you can come over to see me  if you
will write me when youl be in shawneetown Beulah and me
will meet you down their what day will you be in shawnee-
town  Joe Hanly thats my boy that i toled you about he dont
like it because i talk to you but i toled joe it was my busi-
ness and i was going to do as i pleased hurry up and get
Mr. Crawford or your company to let you have a week lay
off tell him that i am anxus to see you and i believe he do
it write me often let me hear from you as i am anxus to
get your kind letters.

your sincere friend

Mrs R C Barrickman"

The bill further avers that by virtue of the contract al-
leged to be contained in the foregoing letter and its accept-
ance by appellant and his marriage, the personal property
of deceased descended to appellee, Adam Rinard, who was
appointed administrator of the estate of deceased, in trust
for appellant; that by a partial distribution of the estate
$14,000 of the personal estate had been distributed to appel-
lee, Margaret Borah, without notice to appellant, by the
order of the Probate Court, and that she took and holds the
same subject to the right of complainant and in trust for
him; that appellant was by virtue of the contract aforesaid
entitled to all the personal estate, and the bill prays that said
order of distribution be declared null and void, and that it
be decreed that said Borah holds the personal property dis-
tributed to her in trust for appellant, and that appellees Rin-

ard and Borah be ordered and decreed to turn over to appellant all the personal property of said estate.

The answer of appellee Borah is a general denial of the alleged agreement set forth in the bill and the letter of deceased, or that appellant relied upon such letter, or any pretended promise therein contained when he entered the marriage relation. The answer further avers that the sole considerations for the contract to marry were the mutual promises of the parties to marry each other, which mutual promises were made, and such contract to marry was entered into long prior to the date of said letter.

The answer of appellee Rinard admits the distribution of the personal property by order of the Probate Court, in which it was ordered that two-thirds thereof be paid to Margaret Borah and one-third to appellant, and that in obedience to such order he did distribute to Margaret Borah $14,054.80 and to appellant the sum of $7,000 and that there is still remaining for distribution the sum of $12,530.47; that at the time the order for distribution was made he acted in good faith, and was ignorant of any claim of appellant other than such as the statute gave him as the surviving husband.

The answers of both also set up matters of defense interposed and alleged to be by way of estoppel.

The main question presented by the record arises upon the third assignment of error, in which it is urged the court erred in finding the equities with appellee Margaret Borah.

Appellant's claim to all the personal estate of the deceased wife is based alone upon the letter of August 28, 1905, which he insists is an offer to give him all her personal estate at her death, in consideration that he will marry her in the fall, and that in consideration of such offer, and upon no other consideration he married her, and having so married her he has performed on his part and is entitled to have the property. If such an agreement could appeal to the conscience of a court of equity it devolves upon appellant to prove it; and to do so it must be shown the marriage was consummated in consideration of an offer contained in the letter.

In the summer of 1905 Rebecca C. Barrickman lived at Fairfield where she boarded at a hotel. She was sixty-eight years old and was childless, except the adopted daughter, Margaret Borah, from whom she had been estranged many years. She was the widow of Dr. Barrickman, who upon his death had left her a considerable property consisting of some real estate, and the personal estate hereinbefore mentioned.

Appellant was a traveling salesman forty-one years of age and resided in the Indian Territory. During the summer of 1905 he came to Fairfield a stranger in the community and a stranger to Mrs. Barrickman. He became acquainted with her after his arrival, visited her at her home, and as early as some time in August of that year it was rumored that she was to marry him.

Evidence was introduced of acts and declarations of Mrs. Barrickman tending to show that prior to the date of the letter she contemplated marriage with appellant, and during the time intervening between appellant's going to Kentucky and his return to Fairfield she was making arrangements to marry.

It is urged that some of these declarations being against his interests were inadmissible. We are of opinion they all formed parts of the *res gestæ* and were competent.

The letter itself shows at the time it was written, that she expected to marry appellant. She writes—"I have just been down to see Mr. Rinard and told him I was going to get married. He said if it was a business matter he could advise me but about marrying a stranger I should be careful," and in this connection she continues: "I told him I wanted you to have all my property and Mr. Kennedy if you and me are married this fall I agree to leave you all my personal property when I die."

We think the letter not only shows she expected to marry appellant but when considered in connection with the other evidence it shows that there was then an existing agreement to marry. She writes she had told Mr. Rinard she was to be married, and further writes that the "friend Lottie" had

said to her if she wanted to marry appellant, and give him her property it was "nobodies business." She had evidently told "Lottie" she was to be married to appellant. These declarations would not probably have been made by her and repeated in the letter to appellant, in the absence of an existing agreement to marry.

It is difficult to believe from the evidence in this record that when the marriage relation was entered into by appellant it was solely in reliance upon the promises in the letter to leave him her personal property as alleged in his bill, and that as further alleged there had been no consent to marry before, and that after an interview with her on the 9th or 10th of September, relying upon said promise, he consented to accept the proposition and promise in the letter, and that then for the first time a contract of marriage was made. There is evidence tending to show appellant in entering into the most sacred of domestic relations was actuated by base and mercenary motives; that he was a fortune hunter, ready and willing to traffic and sell himself at the altar for gain. It is in evidence by one witness that appellant in August was making inquiry about a rich widow in Fairfield and when the name of Mrs. Barrickman was mentioned as one he said "Now that is what I am looking for." This conversation is denied by appellant but the position assumed by him now, and the averments in his bill lend some color to the truth of the statement. This witness further testifies that about the middle, or the latter part of August, appellant told him he was going to marry Mrs. Barrickman. This was prior to the letter of Mrs. Barrickman of August 28th.

But whatever his motives in entering into the marriage, we are of opinion that it can be inferred that the letter and the statement contained in it that she would leave him her personal property was not the inducement. If his purpose was purely sordid and venal he would naturally expect to profit without a contract. He knew Mrs. Barrickman had property. He had no knowledge of the adopted daughter, Margaret Borah, and he might well have expected to come

96    APPELLATE COURTS OF ILLINOIS.

International Filter Co. v. Crystal Ice & Cold Stor. Co., 157 Ill. App. 96.

into a considerable estate, upon the death of his wife who was nearly thirty years his senior.

If he had already agreed to marry which as we have said the evidence, including the letter, shows, we think that the letter was a mere voluntary expression of an intention to leave him her personal estate and was without consideration to support it.

This is a case praying for specific performance of an alleged ante-nuptial agreement. It is an equitable remedy resting in sound judicial discretion, and exercised upon a consideration of all the circumstances of each particular case. To enforce performance of such a contract it must be fair and just, and not affected by any inequitable feature, and it must have a consideration to support it.

As we have already said, the chancellor was justified in finding the letter was not the inducement for the marriage, and the marriage was not the consideration for the alleged promise in the letter, and we are also of opinion that the evidence on behalf of appellant does not show that character of case, which should appeal to the conscience of the chancellor.

We deem it unnecessary to consider the other errors assigned. The decree of the Circuit Court will be affirmed.

*Affirmed.*